IN THE UNTIED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>JAMES PATRICK LEWIS, JR. ) | Magistrate No. 21-239 |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Ryan Palso, being first duly sworn, hereby depose and state a follows:

1. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since October 2019. Prior to my employment with the DEA, I was employed as a uniformed Police Officer on the federal and state levels of law enforcement, with my most recent employer as the Pittsburgh Bureau of Police. I have been employed in a law enforcement capacity since February 2014. As a Police Officer, I have participated in numerous arrests for narcotic offenses and violent crimes. In addition, I have been the affiant on search warrants and arrests. I am currently assigned to the Pittsburgh District Office for the DEA.

2. I have been trained at the Federal Law Enforcement Training Center in Glynco, GA, Pittsburgh Bureau of Police Academy in Pittsburgh, PA, and at the DEA Academy in Quantico, VA. The DEA Academy provided extensive training that lasted for four months and covered a wide array of topics, including federal criminal statutes, interviews and interrogations, drug identification, search and seizure, undercover techniques, search warrant applications and executions, arrest procedures, and numerous other investigative techniques.

3. As a Special Agent with the DEA, I have experience and am responsible for investigating violations of federal laws, specifically Title 21 of the United States Code offenses. Based on my training and experience, I know that it is a violation of Title 21 of the United States Code, Sections 841 (a)1 and 841 (b)(1)(c) to manufacture, distribute or dispense, or possess with intent to distribute a controlled substance. I also know that it is a violation of Title 18 of the United States Code, Section 922 (g)(1) for an individual who has been convicted of a crime punishable by a term of imprisonment of more than one year to possess a firearm.

## PURPOSE AND SCOPE

4. This Affidavit is submitted in support of a criminal complaint charging James LEWIS Jr. (**LEWIS**) with violating Title 21, United States Code, Sections 841 (a)1 and 841 (b)(1)(b), 841 (b)(1)(c), and Section 846 and Title 18, United States Code, Section 922 (g)(1) on February 4, 2021.

5. I am aware that that Title 21, United States Code, Section 841(a)(1) makes it unlawful for any person to knowingly or intentionally possess a controlled substance with intent to distribute a controlled substance.

6. I am further aware that heroin is a Schedule I controlled substance, pursuant to 21 U.S.C. § 812, Schedule I (b)(10).

7. Because this Affidavit is being submitted for the limited purpose of supporting probable cause to arrest and for the issuance of a criminal complaint, as stated therein, I have not included each and every fact known to me concerning this investigation.

## FACTUAL BACKGROUND

8. In February 2020, I began an investigation into **LEWIS**' heroin trafficking activities.

9. Prior to my investigation, DEA cultivated a Confidential Source (CS) that provided extensive details regarding **LEWIS** selling large quantities of heroin in the Pittsburgh, PA region.

10. On March 10, 2020, DEA and the Pittsburgh Bureau of Police (PBP) met to formulate plans to utilize the aforementioned DEA CS to purchase $2,000 worth of heroin from **LEWIS** at 1936 Sedgwick Street Pittsburgh, PA 15212 (herein referred as the **RESIDENCE**). During the controlled purchase, surveillance observed **LEWIS** walk from the **RESIDENCE** and meet with the CS, who was parked outside. **LEWIS** directed the CS to come back later. Once **LEWIS** contacted the CS to come pick up the heroin, the CS drove back to the **RESIDENCE**. Surveillance observed **LEWIS** leaving the **RESIDENCE** and conducting the controlled purchase in the CS' vehicle, which resulted in the CS purchasing five bricks (approximately 250 individual stamp bags) of heroin from **LEWIS** for $2,000 in Official Advanced Funds (OAF). The heroin purchased was sent to the Allegheny County Office of the Medical Examiner (ACOME) for analysis. The results revealed that the heroin purchased from **LEWIS** also contained fentanyl.

11. During the next several months, the CS provided further details regarding **LEWIS'** heroin trafficking activities, to include that **LEWIS** distributes approximately 1,000 bricks (approximately 50,000 individual stamp bags) of heroin a week. The CS also stated that **LEWIS** heads an extensive organization that consists of numerous members.

12. On June 10, 2020, DEA and PBP formulated plans to conduct another controlled purchase from **LEWIS** at the **RESIDENCE** utilizing the CS. Surveillance was established prior to the purchase. During surveillance, law enforcement observed **LEWIS** drive a Ford Explorer to the **RESIDENCE**. Shortly thereafter, the CS drove to the **RESIDENCE**.

**LEWIS** walked from the **RESIDENCE** and entered the CS' vehicle. After talking with the CS, **LEWIS** left the CS' vehicle, got into the Ford Explorer, and drove away from the area of the **RESIDENCE**. A few minutes later, **LEWIS** returned in the Ford Explorer and reentered the front passenger seat of the CS' vehicle. The CS was able to purchase 18 bricks (approximately 900 individual stamp bags) of heroin from **LEWIS** utilizing $3,000 in OAF. This heroin was sent to the DEA laboratory for analysis, and the results showed that the heroin contained fentanyl.

13. On September 3, 2020, DEA and PBP formulated plans to conduct another controlled purchase from **LEWIS** at the **RESIDENCE** utilizing the CS. Surveillance was established prior to the purchase. Surveillance observed the **LEWIS** exit from the residence, place something in the Ford Explorer, and reenter the **RESIDENCE**. Shortly thereafter, **LEWIS** exited the **RESIDENCE** again and entered the CS' vehicle. A recording/transmitting device provided to the CS recorded the CS and **LEWIS** negotiate prices. Surveillance observed **LEWIS** exit the CS' vehicle, go back into the **RESIDENCE**, reemerge from the **RESIDENCE**, and enter the CS' vehicle. The CS was able to purchase 25 bricks (approximately 1,250 individual stamp bags) of heroin utilizing $3,000 in OAF. This heroin was sent to the DEA laboratory for analysis, and the results showed that the heroin was fentanyl that contained caffeine.

14. On September 17, 2020, DEA and PBP formulated plans to conduct another controlled purchase from **LEWIS** at the **RESIDENCE** utilizing the CS. Surveillance was established prior to the purchase. Surveillance observed **LEWIS** drive the Ford Explorer to the **RESIDENCE**. **LEWIS** exited the Ford Explorer and walked over to the CS' vehicle to meet. During this interaction, the CS purchased 18 bricks (approximately 900 individual

stamp bags) of heroin utilizing $2,600 in OAF. After the purchase, **LEWIS** exited the CS' vehicle and used a key to enter the front door of the **RESIDENCE**. The heroin purchased was sent to the DEA laboratory for analysis. The results showed that the heroin was fentanyl.

15. On October 22, 2020, DEA and PBP formulated plans to conduct another controlled purchase from **LEWIS** at the **RESIDENCE** utilizing the CS. Prior to the purchase, surveillance was established at the **RESIDENCE**. The CS drove to the **RESIDENCE** and parked outside. Shortly thereafter, **LEWIS** arrived to the **RESIDENCE** in the Ford Explorer, met with the CS, and drove away in the Ford Explorer. The CS purchased 20 bricks (approximately 1,000 individual stamp bags) of heroin from **LEWIS** utilizing $3,000 in OAF. The heroin purchased was sent to the DEA laboratory for analysis. DEA is awaiting the results.

16. On January 14, 2021, DEA and PBP formulated plans to conduct another controlled purchase from **LEWIS** at the **RESIDENCE** utilizing the CS. Prior to the purchase, surveillance was established at the **RESIDENCE**. The CS and **LEWIS** talked via phone, and **LEWIS** advised the CS to wait a period of time before coming to the **RESIDENCE**. Surveillance observed **LEWIS** driving the Jeep Grand Cherokee away from the **RESIDENCE**. A short time later, **LEWIS** and the CS spoke by telephone and **LEWIS** indicated to the CS that he was ready to conduct the deal with the CS. Surveillance then observed LEWIS driving the Jeep Grand Cherokee to the **RESIDENCE**, park outside, then enter the **RESIDENCE** with something in his right hand. A short time later, the CS arrived at the **RESIDENCE** where an unknown black male exited the **RESIDENCE** and conducted the transaction with the CS. The CS purchased 20 bricks (approximately 1,000

individual stamp bags) of heroin utilizing $2,700 in OAF at this time.  The heroin field tested positive for heroin/opiates.  The heroin purchased was sent to the DEA laboratory for analysis.  DEA is awaiting the results.

17. While investigating **LEWIS**, **LEWIS** changed his primary vehicle from Ford Explorer to the Jeep Grand Cherokee.  The Ford Explorer has been parked at Calfo's Auto Service, located at 101 Greenfield Avenue Pittsburgh, PA 15207 and appears to be secured in the parking lot.  The Jeep Grand Cherokee has been observed on numerous occasions at locations known to be frequented by **LEWIS** and has been parked outside of the **RESIDENCE** and appears to be **LEWIS'** current primary vehicle.

18. I researched the **RESIDENCE** on the Allegheny County Assessment website and discovered that **LEWIS** is the owner on file for the residence and bought the **RESIDENCE** on or around June 8, 2016.

19. During the course of this investigation, law enforcement observed on several occasions individuals frequenting or associated with the **LEWIS** organization carrying firearms.  This was observed while on surveillance at the **RESIDENCE**.  Additionally, known associates of the **LEWIS** organization have been involved in violent crimes, to include shootings.  It became apparent that the **LEWIS** organization engages in violence and is known for their violent tendencies.

20. I researched **LEWIS'** criminal history and found that on or about March 11, 2013, **LEWIS** plead guilty to Pennsylvania crimes code Title 18 §6105- persons not to possess, use, manufacture, control, sell, or transfer firearms in the Allegheny County Court of Common Pleas, Criminal Docket CP-02-CR-5032-2012.  Additionally, I found that **LEWIS** plead guilty to another charge of Pennsylvania crimes code Title 18 §6105- persons not to

possess, use, manufacture, control, sell, or transfer firearms in the Allegheny County Court of Common Pleas, Criminal Docket CP-02-CR-4554-2017. As a result of these convictions, **LEWIS** is prohibited under 18 U.S.C. § 922(g)(1) from possessing a firearm or ammunition.

21. On January 27, 2021, the Honorable U.S. Magistrate Judge Lisa Pupo Lenihan granted four search warrants I applied for: one for **LEWIS'** Jeep Grand Cherokee, one for **LEWIS'** Ford Explorer, one for **LEWIS'** person, and one for 1936 Sedgwick Street Pittsburgh, PA 15212 (the **RESIDENCE**).

22. On February 4, 2021 at 6:00 a.m., DEA executed the aforementioned warrant for 1936 Sedgwick Street utilizing Pittsburgh Bureau of Police (PBP) SWAT. Immediately in plain view, PBP SWAT observed two firearms and loaded firearm magazines on the mantle of the living room of the **RESIDENCE**. A short time later, Lance RUCKER, Antoine KEY, and Manadaze TOWNSEND were detained. A search of the residence yielded the following:

    a. Approximately 773.9 gross grams of heroin;

    b. Approximately 967.9 gross grams of cocaine;

    c. Large quantity of miscellaneous tablets;

    d. Approximately 504.9 gross grams of green leafy marijuana;

    e. Approximately 1,391.8 gross grams of synthetic marijuana;

    f. Large amount of U.S. currency;

    g. One loaded Glock 22 firearm;

    h. One loaded Glock 27 firearm;

    i. One loaded polymer frame firearm;

    j. Loaded Glock magazine;

    k. Loose ammunition;

    l. Indicia for James LEWIS

23. It should be noted that **LEWIS** owns 1936 Sedgwick Street and it is listed in his name.

24. It appears from the items recovered during the search warrant that **KEY** also residing at the residence.  In your Affiant's experience, drug traffickers will allow trusted individuals to reside in their "stash houses," often armed, in order to protect their drug enterprise.

25. In regards to the findings at the **RESIDENCE**, DEA went to 527 Pennwood Drive Pittsburgh, PA 15235 to arrest **LEWIS** and execute the aforementioned warrant for the Jeep Grand Cherokee.  **LEWIS** was subsequently arrested.  A search of the Jeep Grand Cherokee yielded one firearm in the center console.

26. Following the arrest, the seized heroin from the **RESIDENCE** field tested positive for heroin.  The seized cocaine from the **RESIDENCE** field tested positive for cocaine.  The approximate weight for the seized heroin is approximately 773 gross grams.  The approximate weight for the seized cocaine is 967 gross grams.

## CONCLUSION

27.  I submit that, based upon the above-described facts, there is probable cause to believe that LEWIS committed the crime of Possession with Intent to Distribute Heroin, a Schedule I Controlled Substance, in violation of Title 21, United States Code 841(a)(1), Possession with Intent to Distribute Cocaine, a schedule II Controlled Substance, in violation of Title 21, United States Code 841 (a)(1) on February 4, 2021.  I further believe that, based on the above-described facts, there is probable cause to believe that LEWIS engaged in a Criminal Conspiracy with Antoine KEY, in violation of 21 United

States Code 846.  Additionally, I submit that based upon the above-described facts, there is probable cause to believe that LEWIS committed the crime of unlawfully possessing a firearm, in violation of Title 18, United States Code (922)(g)(1) on February 4, 2021.

The foregoing is true and correct to the best of my knowledge, information, and belief.

*/s/ Ryan Palso*
Ryan Palso, Special Agent
Drug Enforcement Administration

Sworn and subscribed before me, by telephone
pursuant to Fed. R. Crim. P. 4.1(b)(2)(A)
this 4th day of February, 2021.

_____
HONORABLE PATRICIA L. DODGE
United States Magistrate Judge
Western District of Pennsylvania